IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| AYLETTE ROPER, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | No. 4:14-cv-00729-SWW |
| | * | |
| | * | |
| PORTFOLIO RECOVERY | * | |
| ASSOCIATES, LLC, and LORI | * | |
| WITHROW, individually and d/b/a | * | |
| ALLEN & WITHROW, ATTORNEYS | * | |
| AT LAW, and d/b/a LAW OFFICES | * | |
| OF ALLEN & WITHROW, | * | |
| | * | |
| Defendants. | * | |

OPINION AND ORDER

Aylette Roper brings this action against Portfolio Recovery Associates, LLC (Portfolio), and Lori Withrow, individually and d/b/a Allen & Withrow, Attorneys at Law, and d/b/a Law Offices of Allen & Withrow (Withrow), alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., and the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. § 4-88-101 *et seq*. Roper alleges defendants violated the FDCPA and the ADTPA by filing a debt collection action in state court that they knew was meritless.

The matter is before the Court on motion of Roper for partial summary judgment [doc.#16]. Defendants have responded in opposition to Roper's motion, Roper has replied to defendants' responses, and Portfolio has filed a sur-reply. For the reasons that follow, the Court denies Roper's motion for partial summary judgment.

## I.

This action relates to a credit card account, no. XXXX-XXXX-XXXX-3250 (a GM Flexible Earnings Card), that was issued by HSBC Bank Nevada, N.A. to Roper.  At all times relevant to this action, there was a balance due on the account.

Roper's credit card statement covering the period from June 8, 2010, to July 9, 2010, reflects that on June 15, 2010, Roper made a payment on the account in the amount of $78.00.  Roper's credit card statements covering the period from July 9, 2010, to January 9, 2011, reflect that no further payments on the account were made and that at the end of that period there was a balance due on the account of $2,187.05.[1]

On July 22, 2011, David Nauman, Vice President of HSBC Bank Nevada, N.A. and HSBC Bank USA, N.A. (collectively "HSBC"), executed an Assignment and Bill of Sale ("Bill of Sale") by which HSBC sold, assigned and transferred to Portfolio all of HSBC's rights, title, and interest in and to certain accounts, including the Roper account no. XXXX-XXXX-XXXX-3250, that were identified in an electronic exhibit attached to the Bill of Sale.  The Bill of Sale states Roper's account had a balance of $2,187.05 and the exhibit attached to the Bill of Sale states the account was delinquent as of January 31, 2011.[2]

---

[1] The vendors identified on the credit card statements as having been paid by the credit card were primarily gas stations, restaurants, and grocery stores, as well as an "Animal Family Practice" clinic, a nail salon, an auto parts store, Comcast, a carwash, and an iTunes account.

[2] On October 27, 2014, Nancy Taylor, Vice President and Assistant Secretary, Administrative Services Division of HSBC Finance Corporation, successor to HSBC Bank Nevada, N.A., and the Vice President and Assistant Secretary of HSBC Bank USA, N.A.,

On July 7, 2014, Withrow, on behalf of Portfolio, filed an action against Roper in the District Court of Pulaski County, Arkansas (Case No. PCCV-14-1963) to collect the credit card debt Roper allegedly owed to Portfolio on account no. XXXX-XXXX-XXXX-3250.  Attached to the complaint was the sworn affidavit of Michael La Douceur, Custodian of Records for Portfolio, indicating that no payment had been made on the account for more than three years.  La Douceur Aff. ¶ 4.  Specifically, La Doucer states that "[a]ccording to the records transferred to the Account Assignee from Account Seller ... there was due and payable from Aylette Roper ... to the Account Seller the sum of $2,187.05 with the [sic] respect to account number ending in (redacted) as of the date of 01/31/2011...."  *Id*.  No other instrument or document upon which the claim is based was attached to the complaint.

On February 4, 2015, the Pulaski County District Court, upon motion of Portfolio, dismissed the action without prejudice pursuant to Ark.R.Civ.P. 41(a).

II.

Roper moves for partial summary judgment on grounds that defendants pursued litigation against her (1) on a facially time-barred debt, (2) with knowledge of defendants' own inability to offer any proof of the validity of the underlying debt or defendants'

---

successor to HSBC Receivable Acquisition Corporation (USA) III (collectively "HSBC"), executed an Affidavit of Sale of Individual Account ("Affidavit of Sale") which states that HSBC "sold the account numbered XXXXXXXXXXX3250 in the name of ROPER, AYLETTE with a balance of $2,187.05… by a Purchase and Sale Agreement and Bill of Sale to Portfolio Recovery Associates, LLC.…"   The Affidavit of Sale further "acknowledges that [Portfolio] became the owner of [Roper's account] on the date of sale."

entitlement to collect the alleged debt, (3) without complying with Ark.R.Civ.P. 10(d), (4) with the supporting affidavit of an individual who lacked personal knowledge of any transactions, business records, or record-keeping practices as alleged by the affiant, and (5) otherwise knowing that the action was improper and untenable.  Roper argues it is undisputed that these actions violated both the FDCPA and the ADTPA and that the only issue remaining for trial is damages.

## A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted).  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,*

475 U.S. at 587 (citation omitted).  "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes

that are irrelevant or unnecessary will not be counted."  *Id.*

B.

<u>FDCPA</u>

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by

debt collectors,' ... and debt collectors are liable for failure to comply with 'any

provision' of the Act."  *Richmond v. Higgins*, 435 F.3d 825, 828 (8th Cir. 2006) (quoting

15 U.S.C. §§ 1692(e), 1692k(a)).  "According to § 1692e, '[a] debt collector may not use

any false, deceptive, or misleading representation or means in connection with the

collection of any debt.'" *Id.*[3]

---

[3] Roper is an individual consumer under the FDCPA, see 15 U.S.C. § 1692a(3) (providing that "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt"), and Withrow and Portfolio are debt collectors under the FDCPA.  See 15 U.S.C. § 1692a(6) (providing that "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another").  Having considered Portfolio's argument, the Court finds that there remain genuine issues of material fact concerning whether the alleged credit card debt at issue was incurred primarily for personal, family, or household purposes.  See 15 U.S.C. § 1692a(5) (providing that "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment").

-5-

The Court will address in turn the alleged instances of conduct that Roper claims constitutes a violation of the FDCPA.

1. Pursuit of Time-Barred Debt

In arguing that defendants pursued the underlying action on a time-barred debt, Roper points to the La Douceur affidavit attached to the underlying complaint that states there was due from Roper the sum of $2,187.05 on the relevant account as of the date of January 31, 2011.  La Douceur Aff. ¶ 4.  Roper argues that the underlying action filed by Withrow on behalf of Portfolio on July 7, 2014, was thus well beyond the three-year statute of limitations applicable to open accounts and that pursuing an action on a time-barred debt violates the FDCPA.  See *Fryermuth v. Credit Bureau Services, Inc*., 248 F.3d 767, 771 (8th Cir. 2001) (holding "that, *in the absence of a threat of litigation or actual litigation*, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid.") (emphasis added)). See also *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013 (explaining that a debt collector's filing of a time-barred suit to recover a debt violates the FDCPA); *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 (11th Cir. 2014) ("Federal Circuit and district courts have uniformly held that a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court to recover that debt violates §§ 1692e and 1692f.") (collecting cases, including

*Freyermuth*[4])).

It is true that the three-year statute of limitations in Ark. Code Ann. § 16-56-105(1) applies to actions on open accounts. See *In Re Pettingill*, 403 B.R. 624, 627 (Bkrtcy. E.D. Ark. 2009).[5] However, debts that arise from a credit card agreement are subject to the five-year statute of limitations in Ark. Code Ann. § 16-56-111 for written obligations. *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, at *18-19, 372 S.W.3d 324, 336 (citing *In re Pettingill*, 403 B.R. 624). Defendants have submitted evidence that Roper's credit card account at issue was used to make purchases, that payments were made on the account, that there is due the sum of $2,187.05 on the account as of January 31, 2011 (with the last payment on the account being made on June 15, 2010), and that Portfolio owns that debt. The filing date of the underlying action–July 7, 2014–was well within the five-year statute of limitations applicable to a credit card agreement.

---

[4] "Of course, *Freyermuth* does not stand for the proposition that a FDCPA violation has occurred if there is *any* sort of litigation associated with a stale debt." *In re Gatewood*, 533 B.R. 905, 908 n.3 (B.A.P. 8th Cir. 2015) (emphasis in original). "It only stands for the proposition that absent litigation or the threat of litigation, there cannot be a FDCPA violation for trying to collect a stale debt." *Id.* "If there is litigation, the decision still needs to be made as to whether the FDCPA has been violated." *Id.* See also *Crawford*, 758 F.3d at 1259 & n.4 (in addressing whether trying to enforce a time-barred debt would be unfair, unconscionable, deceiving, or misleading, court noted that although the FDCPA is generally described as a "strict liability" statute, "a debt collector's knowledge and intent can be relevant–for example, a debt collector can avoid liability if it 'shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'") (quoting 15 U.S.C. § 1692k(c)).

[5] An open account is a type of contractual obligation. *Id.* "In Arkansas, the term 'open account' means an account based upon running or concurrent dealings between the parties, which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated." *Id.*

Roper, however, argues that defendants failed to produce the written credit card agreement underlying their argument that a five-year statute of limitations applies and that "the mere usage of the credit card is insufficient to create a genuine issue of material fact regarding whether a written agreement existed."  While Roper is correct that defendants have not produced the written credit card agreement, the Court may nevertheless take judicial notice that credit cards are issued in conjunction with a written agreement.  See, *e.g., In re Kendall*, 380 B.R. 37, 45 (Bankr. N.D. Okla. 2007) (taking "judicial notice that the terms of an agreement between a credit card holder and a credit card issuer are set forth in writing," and stating that "[t]he complexity of the relationship between a cardholder and card issuer requires that all of these variables be agreed to in a writing or writings, and federal law requires that consumer cardholders be given written disclosure of these terms."); *In re Star*, No. 07-13440DWS, 2008 WL 324125, at *6 (Bankr. E.D. Pa. Feb. 01, 2008) (taking judicial notice that the terms of an agreement between a credit card holder and a credit card issuer are set forth in writing); *In re Richter*, 478 B.R. 30, 41 (Bkrtcy. D. Colo. 2012) (noting that under federal law "[t]he terms of an agreement between a credit card holder and a credit card issuer must be set forth in writing"); *In re Taylor*, 363 B.R. 303, 307 (Bkrtcy. M.D. Fla. 2007) ("All retail charge accounts constitute claims based on a writing"); *In re Cluff*, 313 B.R. 323, 334 n. 32 (Bkrtcy. D. Utah 2004) (noting that the federal Truth-in-Lending Act requires credit card agreements to be in writing); *In re Gulley*, 400 B.R. 529, 540 n. 13 (Bkrtcy N.D. Tex. 2009) ("A claim based on a credit card agreement, which is required to be in writing,

pursuant to the Truth–in–Lending Act, is based on a writing.") (citation and internal

quotation marks omitted).  Thus, failure to produce the written agreement does not

necessarily preclude application of the five-year statute of limitations and the Court

denies Roper's motion for summary judgment on her claim that defendants pursued a

time-barred debt.[6]

      2.  <u>Inability to Prove Validity of Underlying Debt or Entitlement to Collect Debt</u>

      Roper argues that defendants filed the underlying action knowing they could not

prove the validity of the original debt and knowing they could not prove any assignment

to Portfolio which would entitle Portfolio to collect the debt.  Roper argues the existence

of a valid and enforceable agreement between herself and the original creditor is critical

to Portfolio's claims in the underlying action and yet Portfolio cannot produce evidence

from which a finder of fact could determine that such an agreement existed.

      Roper is not entitled to summary judgment on this claim as the Court has already

found that defendants have submitted evidence that Roper's credit card account at issue

was used to make purchases, that payments were made on the credit card account, that

there is due the sum of $2,187.05 on that account, that Portfolio owns that debt, and that

the Court may take judicial notice that credit cards are issued in conjunction with a

---

[6] As to why the written agreement has not been produced, Withrow states that "[p]ursuant to the Truth in Lending Act (Regulation Z), specifically at 12 C.F.R. 226.25, and the Equal Credit Opportunity Act (Regulation B), specifically at 12 C.F.R. 202.12, creditors may destroy documentation relating to debts after selling the account, and in fact creditors do routinely destroy such documentation."  Withrow states that "[i]t is more than likely that the original creditor no longer maintains records relating to the subject debt."

written agreement.  Morever, defendants have attached to the underlying complaint the La

Douceur affidavit certifying that Roper's debt has been "sold, assigned and transferred"

to Portfolio and the amount of that debt.  "The filing of an affidavit is sufficient, and

while a debtor is entitled to ask for more information, the FDCPA does not require a

creditor to establish a hyper-detailed paper trail as a predicate to filing suit." *Jackson v.*

*Portfolio Recovery Associates, LLC*, No. 3:15-cv-00075 BSM (E.D. Ark. July 1, 2015).

See also *Loftis v. Credit Acceptance Corp.*, No. 4:10cv000496 BSM, 2011 WL 976621, at

*2-3 (E.D. Ark. March 18, 2011) ("The failure to attach the written obligation to the state

court complaint ... does not constitute a false statement" under the FDCPA).

3.  Failure to Comply with Ark.R.Civ.P. 10(d)

"Rule 10(d) concerns form of pleadings and required exhibits, and states that '[a]

copy of any written instrument or document upon which a claim or defense is based shall

be attached as an exhibit to the pleading in which such claim or defense is averred unless

good cause is shown for its absence in such pleading.'" *LVNV Funding, LLC v. Nardi*,

2012 Ark. 460, 2012 WL 6218481, at *2-3 (quoting Ark.R.Civ.P. 10(d)).  Roper argues

that defendants willfully violated Rule 10(d) by failing to attach to the underlying

complaint the written agreement upon which the claim was based.

The FDCPA is not "an enforcement mechanism for other rules of state and federal

law," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir.

2007), and Roper acknowledges that a failure to comply with Rule 10(d) does not,

"standing on its own," constitute a violation of the FDCPA.  See *Carlson v. First Revenue*

*Assur.*, 359 F.3d 1015, 1018 (8ᵗʰ Cir. 2004) ("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation."); *Born*, 2010 Ark. 292, at *20, 372 S.W.3d at 337 ("[i]t is ... clear that general violations of the Arkansas Rules of Civil Procedure do not necessarily give rise to a claim under the FDCPA."); *Higgins v. Capitol Credit Card Services, Inc.*, 762 F.Supp. 1128, 1137 (D. Del. 1991) (noting that a suit in federal court alleging violation of the FDCPA is not an appropriate forum for challenging state court procedures) (cited with approval in *Born*, 2010 Ark. 292, 372 S.W.3d 324)). Based on this record, the Court finds that Roper is not entitled to summary judgment on her claim that defendants violated Ark.R.Civ.P. 10(d) by failing to attach to the underlying complaint the written agreement upon which the credit card account is founded.

4. <u>Lack of Personal Knowledge of Affiant</u>

Roper essentially argues that La Douceur's representations in his affidavit that he reviewed relevant records and that Roper's account had been assigned to Portfolio are false and misleading because there were no such records to review.  Roper argues that "filing the Affidavit rife with wholly false and unsupported allegations violates Section 1692e of the FDCPA, which prohibits the use of a[n]y 'false, deceptive, or misleading representation or means in connection with the collection of any debt.'"

The Court denies Roper's motion for summary judgment on this claim as Portfolio correctly notes, consistent with the representations in the La Douceur affidavit, that it has

produced both a copy of the Bill of Sale by which it acquired Roper's debt and the electronic exhibit to the Bill of Sale that identifies Roper's debt by, among other information, the account number, Roper's name, the amount of the debt, the original creditor, Roper's date of birth, and Roper's social security number.  Roper has not shown that La Douceur lacked personal knowledge of any transactions, business records, or record-keeping practices relevant to the underlying action.

     5. <u>Knowledge of Untenable Lawsuit</u>

Roper states that although each of the deficiencies set forth above are sufficient on their own to support a violation of the FDCPA, a finder of fact viewing all of the shortcomings as a whole could not find compliance with the FDCPA.  Roper goes on to assert that Portfolio issued a letter to her in which Portfolio admitted that no debt was owed by her to Portfolio and she argues that "[t]here is only one conclusion to be drawn from the facts in this case—that Defendants wilfully violated Section 1692e of the FDCPA through their false, deceptive and misleading assertions made in the underlying lawsuit."

For the reasons set forth in today's Opinion and Order, the alleged deficiencies identified by Roper do not entitle her to partial summary judgment.  Moreover, the Porfolio letter to which Roper refers relates to a different credit card account that has nothing to do with this action.

ADTPA

The catchall provision of the ADTPA, Ark. Code Ann. § 4-88-107(a)(10),

prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade" that is not listed under the first nine subsections of § 4-88-107(a).  The elements of a cause of action under § 4-88-107(a)(10) are (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act.  *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015).

Roper does not allege that any conduct on the part of defendants violates the ADTPA apart from the same conduct that she alleges violates the FDCPA and both defendants argue that Roper's motion for summary judgment on her ADTPA claims should be denied for the same reasons summary judgment should be denied on her FDCPA claims.  The Court agrees and further finds that Roper's motion for summary judgment on her ADTPA claims fails for two additional reasons not articulated by the defendants.

First, concerning Withrow, the Arkansas Supreme Court has made clear that the ADTPA does not apply to an attorney practicing law in undertaking debt collections.  See *Boyajian v. State*, 2012 Ark. 210, at *2-3, 2012 WL 1739107; *Bennett & Deloney, P.C. v. State ex rel. McDaniel*, 2012 Ark. 119, at *6-7, 388 S.W.3d 12, 15-16; *Born*, 2010 Ark. 292, at *14-15, 372 S.W.3d at 334.[7]  Because it is undisputed that Withrow was engaged

---

[7] The Court noted that "[t]he practice of law cannot be regulated by an act of the General Assembly because the practice of law is within the exclusive jurisdiction of the judiciary." *Boyajian*, 2012 Ark. 210, 2012 WL 1739107.

in the practice of law in undertaking the debt collection on behalf of Portfolio, the

ADTPA had no applicability to her actions in undertaking that debt collection.[8]

Concerning Portfolio, there is no showing or allegation even that Portfolio engaged

in any direct communications or dealings with Roper–this action is based solely on the

filing of the underlying action by Withrow on behalf of Portfolio.  But even if Withrow's

conduct may be imputed to Portfolio for vicarious liability purposes, Withrow's conduct,

as a matter of law, does not constitute a violation of the ADTPA, thereby precluding an

ADTPA claim against Portfolio founded on Withrow's conduct.  *Cf. In re Humes*, 496

B.R. 557, 584-85 (Bkrtcy. E.D. Ark. 2013) (creditor was not liable to debtor for alleged

violation of ADTPA, where creditor did not engage in any direct communications or

dealings with debtor and, under Arkansas law, law firm's conduct in undertaking debt

collections on behalf of creditor could not establish violation of ADTPA, precluding

creditor's vicarious liability even if law firm's intentional conduct could be imputed to

creditor), *report and recommendation adopted*, No. 3:13-cv-00179-SWW (E.D. Ark.

Aug. 7, 2013).

## III.

For the foregoing reasons, the Court denies Roper's motion for partial summary

---

[8] In her complaint, Roper states that "Defendant Withrow also conducts the business of a debt collector and at times the actions taken by Defendant are either not those of an attorney or they are actions consisting of the blended duties of debt collector and attorney."  Compl. ¶ 9. Roper, however, does not identify anything indicating that any of the actions taken by Withrow in undertaking the debt collection on behalf of Portfolio were not those of an attorney engaged in the practice of law.

judgment.[9]

IT IS SO ORDERED this 5th day of October 2015.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[9] On September 18, 2015, Portfolio filed a motion for leave to file a sur-reply to address what it claimed were misrepresentations of fact and law in Roper's reply to Portfolio's response to Roper's motion for partial summary judgment.  Portfolio attached to its motion a copy of the proposed sur-reply as "Exhibit A."  After reviewing the proposed sur-reply, the Court, by order entered September 24, 2015, granted Portfolio's motion (the Court in that same order also granted Roper leave to file an amended reply).  However, the sur-reply subsequently filed by Portfolio differs from its earlier proposed sur-reply in several respects, including the addition of a section addressing for the first time what it claims was litigation conduct that is unreasonable and oppressive and requesting that the Court exercise its inherent authority to award Portfolio its reasonable attorney fees incurred in responding to and opposing Roper's motion for partial summary judgment.  Because this section was not included in the proposed sur-reply which the Court relied upon in granting Portfolio's motion for leave to file a sur-reply, the Court does not consider Portfolio's request for attorney fees incurred in responding to and opposing Roper's motion for partial summary judgment.  Moreover, "[a]s a general rule, courts in the Eighth Circuit will not consider arguments raised for the first time in a reply brief."  *Hanjy v. Arvest Bank*, — F.Supp.3d —, 2015 WL 1246186, at *4 (E.D. Ark. March 31, 2015).